## Evert v. Elk County Board of Assessment and Revision of Taxes

*Norbert J. Pontzer*, for appellants.

*B. R. Coppolo*, for respondents.

GREINER, P. J., April 15, 1965.—For determination by the court is a very narrow issue involving the interpretation of The Fourth to Eighth Class County Assessment Law of May 21, 1943, P. L. 571, art. 1, sec. 101, et seq., as amended, 72 PS §5453.101 et seq.:—Does the Board of Assessment and Revision of Taxes for Elk County have the right in a subsequent year to change or correct assessed valuations made in a preceding year on real property in a certain designated subdivision or area, when there has been no actual or substantial physical change to such properties as contemplated by art. 6, sec. 602.1 of said assessment law, added January 18, 1952, P. L. (1951) 2138, sec. 2, 72 PS §5453.602a?

## HISTORY

In January 1964, the Township of Benzinger and the School District of Benzinger Township filed an appeal in the court of common pleas to December term, 1963, no. 76, from an order of the Elk County Board of Assessment and Revision of Taxes changing the assessed valuation of property owned by Dudley Campbell, et ux., in the Sherry subdivision in Benzinger Township. The taxing bodies contended that the county board had no legal right to change this particular assessment merely because the original assessment was excessive in comparison with assessments of similar properties in the same area, without any evidence that the original assessment was not based upon the "actual value thereof."

When this particular appeal was brought before

the court for hearing, the county board stated that it intended to reappraise and reassess all properties in the Sherry subdivision, since it clearly appeared that the original assessment of the Campbell property, although correct, and in line with the actual value thereof, was much higher than the appraised values and assessments of similar properties in that area. It was accordingly agreed by counsel for the taxing bodies and the county solicitor that hearing on the Campbell assessment appeal should be postponed until the county board reappraised and reassessed all the properties in the Sherry subdivision. This proposed action by the county board was also taken in response to the written request of the two taxing bodies dated January 10, 1964, calling attention to incorrect and inequitable assessments in the Sherry subdivision.

In May 1964, the Board of Assessment and Revision of Taxes of Elk County instructed the chief assessor to reassess all of the properties in the Sherry subdivision in Benzinger Township. The chief assessor accordingly reassessed all of the said properties, increasing the assessed valuation of the buildings on approximately 24 properties, reducing the assessment on one building, and making no change on nine properties. The net assessment for this area was increased by $15,530.

Notice of the reassessment was duly given all of the property owners affected, the Township of Benzinger and the School District of Benzinger Township.

Thirteen of the property owners affected filed an intention to appeal with the county board, in due time, and the county board fixed September 17, 1964, as the date for hearing on these appeals. Notices of the date for hearing on the appeals were duly given to the two taxing bodies, as well as the property owners affected.

Ten of the appealing property owners, by their counsel, agreed with the county solicitor to waive the hearings before the board, so that the matter could be appealed directly to the court of common pleas for the sole purpose of determining the single question of law involved, to wit, the legal right of the county board to reassess these particular properties.

Accordingly, the 10 appealing property owners filed their appeal to this court, alleging "that they have made no changes in their properties which would result in an increase in valuation and, therefore, in accordance with The Fourth to Eighth Class Assessment Law of May 21, 1943, P. L. 571, art. 6, as amended January 18, 1952, P. L. (1951) 2138, and July 17, 1953, P. L. 464, sec. 2, 72 PS §5453.602, no change or assessment could be made." They further allege "that there having been no improvements made to the petitioners' properties, the chief assessor had no authority under The Fourth to Eighth Class Assessment Law to change the values of the properties of your petitioners."

The Township of Benzinger and the School District of Benzinger Township through their solicitor appeared amicus curiae.

There are no disputed facts. The history of the case prior to the filing of this appeal was as recited by the solicitor for the county and solicitor for the taxing bodies of Benzinger Township and Benzinger Township School District and concurred in by counsel for the appealing property owners. The only testimony offered was that of the chief assessor, which testimony confirmed such history and also the allegation of the petitioners that there had been no actual or substantial physical change in their properties nor in the economy of that portion of the county so as to affect the values of subject real estate. In addition, the chief assessor testified that most of the properties in the Sherry subdivision were originally assessed on the basis of being

in class 5 according to the assessor's manual defining various classifications for residential properties. He further testified that, according to his manual, a class 5 dwelling includes a residence between low-cost grade and average grade; whereas his reexamination and reappraisal of the properties clearly indicates all of the properties involved are "between the above average grade and high grade" and should, therefore, be classified as being in either class 6 or class 7. His testimony was received without contradiction.

All counsel specifically agreed that there is no question as to the actual values ascribed to all 10 properties involved. They agree that the new increased assessed valuations are correct as to amount in the event they were legally and properly made by the county board. Although not controlling, the court takes judicial notice of the fact that the Sherry subdivision and the area involved has been further improved and developed since the original assessment by reason of construction of additional high quality dwelling houses and road improvements.

## DISCUSSION

Counsel cite no cases involving the same issue and it appears the present case is one of first impression. The Fourth to Eighth Class County Assessment Law is not a perfectly drawn piece of legislation and fails to cover many specific matters, such as the right of a property owner or taxpayer to appeal annually when there has been no change in assessment. Likewise, the right of the county board to change assessments in a particular area when there has been no physical change in the individual properties nor change in the economy of the area so as to affect real estate values is not clearly spelled out and is left for the court to resolve. Its intent, however, is unmistakable as set forth throughout all the provisions of the act. That intent

was to achieve uniformity of assessments throughout each county of the fourth to eighth class based on actual value of the properties assessed.

The law governing assessment of land for the purpose of taxation is statutory, and neither the assessors, county commissioners, boards of revision, nor the courts on appeal have authority to proceed in any other manner than is prescribed by the statutes: Philadelphia & Reading Coal & Iron Company v. Northumberland County Commissioners, 229 Pa. 460. Thus, if the reassessments by the chief assessor and the approval and adoption of such reassessment by the county board in the summer of 1964 were not made in compliance with the above-cited Fourth to Eighth Class County Assessment Law, they are illegal and cannot stand.

It is the contention of appellants that the assessment law contains only two sections providing for the reassessment of property. The first of these, section 602a*, 72 PS §5453.602a, provides for reassessment by the chief assessor as follows:

"The chief assessor may, with the consent of the board, change the assessed valuation on real property when (i) a parcel of land is divided and conveyed away in smaller parcels, or (ii) when the economy of the county or any portion thereof has depreciated or appreciated to such extent that real estate values generally in that area are affected, and (iii) when improvements are made to real property or existing improvements removed from real property."

The second, section 701, provides for changes in assessment or valuation by the board upon receipt of the tax roll from the chief assessor which, in part, provides as follows:

---

* For purpose of brevity and easier identification, all references are to Purdon's Statutes subsections of §5453, 72 PS §5453.101 et seq.

"(a) Upon receipt of the assessment roll from the assessor, or as soon thereafter as possible and not later than the fifteenth day of August, the board shall examine and inquire whether the assessments and valuations have been made in conformity with the provisions of this act, and shall revise the same, increasing or decreasing the assessments and valuations as in their judgment may seem proper, and shall add thereto such property or subjects of taxation as may have been omitted. It shall within five days after completing said examination and revision cause to be mailed or delivered to each owner of property or person assessed, the value of whose property or personal assessment has been changed from that fixed in the preceding assessment roll as corrected after revision at his last known address, a notice of such change and the amount of such new assessment. Said notice shall state that any person aggrieved by such change or by any assessment, may appeal to the board for relief by filing with the board on or before the first day of September, a statement in writing of such intention to appeal, designating the assessment or assessments by which such person is aggrieved, and the address to which notice of when and where to appear for hearing of the appeal shall be mailed.

"(b) Any person aggrieved by any assessment may appeal to the board for relief. Any person desiring to make an appeal shall, on or before the first day of September, file with the board a statement in writing of intention to appeal, setting forth: . . ."

It is admitted that none of the three bases for valuation changes as set forth in section 602a exist now nor at the time the chief assessor and the board corrected the assessed valuations in the summer of 1964. Appellants recognize that section 701 gives the board power to examine the tax rolls to determine if they are in conformity with the provisions of the act; that

the board may revise the rolls, changing assessments and valuations as they think proper and add subjects of taxation which have been omitted and that the board possesses power to change valuations when the assessment has not been made in conformity with the law. They thus conclude that the power of the board is limited to changing the tax rolls in these two instances, i.e. nonconformity or omission. However, they submit that "since the reassessments and re-evaluations of the properties involved in the present appeal were made by the chief assessor, prior to sending his tax rolls to the board, the board's power is not relevant here." Having thus threaded the nebulous eye of their Aristotelian needle, appellants conclude that only section 602a, granting the power to the chief assessor to make changes in valuation, is involved in this appeal.

With such conclusion this court cannot agree. It is not in conformity with the facts or with the broad legislative intent to achieve uniformity based on actual values. Clearly, this is a case of nonconformity, i.e. the original assessments had not been based on actual value as required by section 602. Admittedly, the corrected or changed valuations are the actual values as conditioned by the other requirements prescribed in section 602. According to this same section 602, it makes it mandatory that the chief assessor assess, rate and value all subjects and objects of local taxation *"according to the actual value thereof"* (italics supplied). In the present case the board's attention was directed to the fact that subject properties had been assessed at less than actual value. The chief assessor being an employe and under the jurisdiction of the board was directed by them to personally investigate the under valuations and inconsistencies in the Sherry subdivision as alleged by the taxing bodies. As a result of his investigation, the chief assessor, in compliance with the mandatory duty imposed upon him

by law, corrected the assessments and made reassessments in accordance with the actual values and other requirements of section 602.

It is not material or relevant that the chief assessor corrected the improper and illegal assessments and determined the reassessments prior to submitting the tax rolls to the board. Appellants in their argument admit, and if not so, it is here determined, that section 701 imposes upon the board a mandatory duty to "examine and inquire whether the assessments and valuations have been made in conformity with the provisions of this act," and further that the board "shall revise the same, increasing or decreasing the assessments and valuations as in their judgment may seem proper, and shall add thereto such property or subjects of taxation as may have been omitted." The words "conformity with the provisions of this act" impose upon the board the same mandatory duty to value and assess the properties "according to the actual value thereof" as is imposed upon the chief assessor. Thus, even if the chief assessor had not acted as an agent or instrumentality of the board, reviewing the properties and arriving at correct, increased valuations in conformity with the act, the board itself, in accordance with the duties imposed upon it, after examination and inquiry, adopted new valuations and assessments in accordance with the actual values.

An element of life recognized by all is that of human error. The chief assessor and the board admit the original assessments were erroneously made and not in conformity with "the actual value" criteria prescribed by the act. Subject to the right of appeal to the court, the act clearly establishes the board as the final authority in carrying out the act's mandates. The language of section 701 is sufficiently broad to vest in the board the power to correct assessments erroneously made by increasing or decreasing such assessments or

valuations as in the board's judgment is proper and in conformity with the provisions of the act. Such is not only the power of the board but its mandatory duty. Any interpretation to the contrary would be most incongruous with the legislative intent to impose final administrative authority in a single county board in order that uniformity of valuations and assessments might be better achieved. The question is resolved in the affirmative and the county board does have the power and duty to correct erroneous and improper assessments.

The court, therefore, makes the following

### ORDER

And now, April 15, 1965, the appeal of petitioners is dismissed and the new assessed valuations as adopted by the Board of Assessment and Revision of Taxes for Elk County for the 10 petitioners' properties as set forth in the appeal are hereby confirmed. The docket costs in this proceeding shall be paid by the County of Elk.